Katessa M. Charles (SBN 146922)
Katessa.Charles@jacksonlewis.com
Nicole A. Aaronson (SBN 309263)
Nicole.Aaronson@jacksonlewis.com
**JACKSON LEWIS P.C.**
725 South Figueroa Street, Suite 2500
Los Angeles, California  90017-5408
Telephone:   (213) 689-0404
Facsimile:   (213) 689-0430

Attorneys for Defendant
GOLDBERG SEGALLA LLP

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JOHN F. STEPHENS, an individual, | Case No.: 2:20-cv-05216-PSG-PD |
| Plaintiff, | [*Assigned to Hon. Philip S. Gutierrez*] |
| v. | **DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| GOLDBERG SEGALLA LLP., and DOES 1 to 20. | |
| Defendants. | Complaint Filed:    March 8, 2020 |
|  | Trial Date            June 29, 2021 |

## **TABLE OF CONTENTS**

I.   FINDINGS OF FACT ................................................................................ 6

   A.   The Parties ................................................................................... 6

   B.   John Stephens is Hired to Work at Goldberg Segalla ................. 6

   C.   The Dr. Goldman Matter ............................................................ 12

   D.   Other Stephens Performance Issues ........................................... 15

   E.   Stephens' Compensation ............................................................ 17

   F.   Stephens' Subsequent Employment ........................................... 17

II.  CONCLUSIONS OF LAW ..................................................................... 18

   A.   Jurisdiction ................................................................................. 18

   B.   Stephens' Claim for Breach of Contract .................................... 18

      1.   Stephens' Has Not Met His Burden of Proving the Existence of a Contract ................................................... 18

      2.   Interpreting the Offer Letter as a Contract ...................... 20

      3.   Stephens' Performance or Excuse for Nonperformance ... 21

         a.   Whether Stephens Failed to Perform His Obligations Under the Contract ......................... 21

         b.   The Trigger for the Employment Termination - Whether Stephens Failed to Perform His Obligations Under the Agreement Through his Dealings on the Dr. Goldman Matter ................................................................. 23

      3.   Whether Goldberg Segalla Breached the Agreement ....... 26

      4.   Stephens' Damages .......................................................... 28

      5.   Goldberg Segalla's Affirmative Defenses ....................... 30

   C.   Stephens' Claims of Fraud by Intentional Misrepresentation ..... 30

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AIG Centennial Ins. Co. v. Fraley-Landers,*
    450 F.3d 761 (8th Cir. 2006) ...................................................................27

*Scottsdale Ins. Co. v. OU Interests, Inc.,*
    No. C 05-313 VRW, 2005 WL 2893865 (N.D. Cal. Nov. 2, 2005) ..................27

*United States v. Schaeffer,*
    319 F.2d 907 (9th Cir. 1963) ...................................................................27

*West American Ins. Co. v. Hernandez,*
    669 F.Supp.2d 1211 (D. Or. 2009) ...........................................................27

**California Cases**

*Abifadel v. Cigna Insurance Co.,*
    8 Cal. App. 4th 145 (1992) ......................................................................20

*Alexander v. Codemasters Group Ltd.,*
    104 Cal. App. 4th 129 (2002) ..................................................................19

*Apple Computer, Inc. v. County of Santa Clara Assessment Appeals Board,*
    105 Cal. App. 4th 1355 (2003) ................................................................20

*Boswell v. Reid,*
    199 Cal. App. 2d 705 (1962) ...................................................................21

*Brandon & Tibbs v. George Kevorkian Accountancy Corp.,*
    226 Cal. App. 3d 442 (1990) ...................................................................29

*Bustamante v. Intuit, Inc.,*
    141 Cal. App. 4th 199 (2006) ..................................................................19

*Careau and Co. v. Security Pacific Business Credit, Inc.,*
    222 Cal. App. 3d 1371 (1990) ................................................................21

*CDF Firefighters v. Maldonado,*
    158 Cal. App. 4th 1226 (2008), *as modified on denial of reh'g* (Feb. 5, 2008) ...............................18

*Consolidated World Investments, Inc. v. Lido Preferred Ltd.,*
    9 Cal. App. 4th 373 (1992) ......................................................................20

*Daniels v. Select Portfolio Servicing, Inc.,*
    246 Cal. App. 4th 1150 (2016) ................................................................19

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW

*Engalla v. Permanente Med. Grp., Inc.*,
   15 Cal. 4th 951 (1997) ...................................................................................30

*First Commercial Mortgage Co. v. Reece*,
   89 Cal. App. 4th 731 (2001) ..........................................................................18

*General Motors v. Superior Court*,
   12 Cal. App. 4th a435 (1993) .........................................................................20

*Jara v. Suprema Meats, Inc.*,
   121 Cal.App.4th 1238 (2004) .........................................................................28

*Jimenez v. Superior Court*,
   29 Cal.4th 473 (2002) ....................................................................................29

*Platt Pacific, Inc. v. Andelson*,
   6 Cal.4th 307 (1993) ......................................................................................27

*Roscoe Moss Co. v. Jenkins*,
   55 Cal. App. 2d 369 (1942) ...........................................................................28

*Sanchez v. Bally's Total Fitness Corp.*,
   68 Cal. App. 4th 62 (1998) ............................................................................20

*Starzynski v. Capital Public Radio, Inc.*,
   88 Cal. App. 4th 33 (2001) ............................................................................20

*Sunniland Fruit, Inc. v. Verni*,
   233 Cal. App. 3d 892 (1991) ..........................................................................20

*Taliaferro v. Davis*,
   216 Cal.App.2d 398 (1963) ............................................................................21

*Estate of Thottam*,
   165 Cal. App. 4th 1150 (2008) .......................................................................19

*Wal-Noon Corp. v. Hill*,
   45 Cal. App. 3d 605 (1975) ...........................................................................28

*Weddington Productions, Inc. v. Flick*,
   60 Cal. App. 4th 793 (1998) ..........................................................................19

*Winet v. Price*,
   4 Cal. App. 4th 1159 (1992) ..........................................................................20

**Other State Cases**

*Abuemeira v. Stephens*,
   Civil No. B264542 ..........................................................................................6

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW

*City of Hermosa Beach v. Superior Court*,
    No. B218010, 2010 WL 459609 (2010) ..........................................................27

**Federal Statutes**

28 U.S.C.
    § 1332.................................................................................................................18
    § 1391(b).............................................................................................................18

**California Statutes**

CAL. CIV. CODE
    § 1436.................................................................................................................27
    § 3300.................................................................................................................29

California Labor Code
    § 2922.................................................................................................................20

**Other Authorities**

Fed. R. Civ. P. 52(a) .................................................................................................6

Local Rule 52-1 and 52-3 .........................................................................................6

REST.2D, CONTRACTS, § 237, cmt. a .....................................................................21

Restatement (Second) of Contracts.........................................................................21

RESTATEMENT (SECOND) OF CONTRACTS § 33(2) ................................................19

Restatement Second of Contracts § 71 ...................................................................28

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW

TO THE COURT, PLAINTIFF, AND HIS COUNSEL OF RECORD:

Pursuant to Fed. R. Civ. P. 52(a), Local Rule 52-1 and 52-3, and this Court's Order for Court Trial, Defendant Goldberg Segalla LLP ("Defendant" or "Goldberg Segalla") hereby submits the following [Proposed] Findings of Fact and Conclusions of Law:

# I.   FINDINGS OF FACT

## A.   The Parties

1.   Plaintiff John F. Stephens ("Plaintiff" or "Stephens") is an individual who currently does, and at all relevant times did reside in the state of California.

2.   Goldberg Segalla is a limited liability company organized in the state of New York and has its headquarters in Buffalo, New York.  Goldberg Segalla is a law firm.

## B.   John Stephens is Hired to Work at Goldberg Segalla

3.   In December 2017, Stephens and Goldberg Segalla's then-managing partner Richard Cohen ("Cohen"), discussed Stephens joining Goldberg Segalla.  [Trial Exhibit ("Exh.") 7.]

4.   During the pre-hiring process on December 10, 2017, Stephens filled out a Lateral Partner Candidate Due Diligence Questionnaire which asked whether he was currently, or had been in the proceeding ten years, a party in any administrative proceeding, arbitration, or criminal or civil action to which Stephens indicated he had not.  The Questionnaire also asked whether anyone had "ever made a harassment claim, sexual or otherwise," against him, along with whether a domestic violence claim was ever made against him.   Stephens answered "no" to both questions. Stephens failed to disclose *Abuemeira v. Stephens*, Civil No. B264542, filed in the Ventura County Superior Court and decided April 27, 2016 involving claims of assault and battery and its related criminal court filing.   [Exh. 3, GS 000025-31; Exh. 5.]

5.   On December 16, 2017, Cohen emailed Stephens an offer letter for employment at Goldberg Segalla which documented the key elements of the parties' pre-hiring discussions (the "Offer Letter").  [Exh. 7, GS 000005-9.]

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW

6. The Offer Letter read, in pertinent part:

> This letter is to confirm our offer for you to join us as a Level-2 (*ie* highest level) non-equity partner (NEP2), resident in our proposed Los Angeles office with a tentative start date of January 2, 2018.
>
> . . .
>
> Our vision for you will not be dictated to you; rather, it will be shaped by your own interests and skill set. We do anticipate that immediately upon arrival you will become the firmwide Chair of our Cyber/Data risk practice, and also Vice-Chair of our Sports/Entertainment practice. . . .
>
> . . .
>
> Given your recent experiences, it is important to note that Goldberg Segalla is comprised a bit differently than most other firms in terms of its overall partnership composition. We do not recognize the notion of "contract partners." Nonetheless, of our nearly 180 partners, only 21 are K-1 equity partners and thus have an ownership interest in the firm. All other partners in the firm are non-equity (W-2) partners, who need not sign a partnership agreement, have no capital requirement, and who are employed at will, thus free from exposure for the firm's financial obligations – whatever they may be or ever become.
>
> . . .
>
> As a non-equity partner you would be paid as a W-2, meaning that in addition to your compensation, the firm pays the employer-side taxes (social security, medicare, federal unemployment, state unemployment, etc.) as well as most of the insurance that you currently pay, rather than you paying them yourself. As a W-2 (as opposed to K-1) partner, you would have withholdings taken from your bi-weekly draw and distributions, but would not have any obligation to pay quarterly estimated taxes.
>
> As we have discussed, we work on a "base+bonus" system, under which partners receive a standard base (and draw, *i.e.* the portion of your compensation divided into 26 equal bi-weekly payments) of $120,000 per annum, to which bonuses for production and "leadership" (in other words, those contributions not reflected by the billable hour) are added to arrive at a total compensation figure.
>
> Shortly after your arrival at the firm you will receive in writing the comprehensive information about our bonus program and compensation criteria. . . .

[*Id.*]

7. Goldberg Segalla's W-2 partner production bonus is related to achieving billable

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

hour milestones.  [*Id.*]

8.    Goldberg Segalla's W-2 partner leadership bonus is subjective but is based on specific objective criteria, such as origination of business, cultivation of client relationships, quality of work, quality of service, development of reputation in the field, publishing, speaking, organizational involvement and other various indicia of leadership.  [*Id.*]

9.    The Offer Letter is not expressly identified as an agreement and does not contain an attorneys' fees provision, modification provision, severability provision, governing law provision or integration provision.  [*Id.*]

10.    The Offer Letter contains a list of "expectation[s] and understand[ings of] partners. . ." as follows:

1.    coordinate on all business development efforts prior to and after such efforts;
2.    enter time on a daily basis;
3.    provide all necessary information for full conflict checks, timely file opening, and draft engagement letters;
4.    adhere to ethical rules of conflicts and engagement;
5.    timely respond to clients and colleagues;
6.    review and return pre-drafts of client invoices immediately an issue them immediately upon receipt from our accounting department;
7.    conduct regular follow-up with clients for amounts past due;
8.    remain in good standing with all governing and regulatory bodies;
9.    be honest in dealing with colleagues, clients and other professionals;
10.    carry out duties loyally, diligently and in accordance with the directions of the firm. This includes keeping the firm properly informed about involvement in the business of the firm; always giving it the full benefit of your knowledge, expertise and skills; promoting and protecting the interests and reputation of the firm; and not knowingly or deliberately doing anything which is to the firm's detriment;
11.    maintain the highest standards in terms of both personal and professional conduct. When acting on the firm's behalf, doing so with honesty, good faith and fairness and doing nothing which brings the firm into disrepute;

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

12. comply with the firm's policies and procedures and with all reasonable instructions or requests made by the firm;

13. at all times maintain effective and professional relations with colleagues and to avoid abusive, obstructive or threatening actions;

14. not without the prior written consent of the firm, directly or indirectly receive or retain any payment or benefit, either in respect of any business transaction (whether or not by you) by or on behalf of the firm, or with a view to any such business being transacted.

[*Id.*]

11. On December 21, 2017, Stephens signed the Offer Letter "indicating that [he] ha[d] received and ha[d] read it and accept its terms."

12. Stephens began working for Goldberg Segalla on January 8, 2018.

13. At the outset of his employment, on January 8, 2018, Stephens acknowledged receipt of the Goldberg Segalla Employee Handbook. The acknowledgement page includes the following provisions:

> I understand that all of the policies contained in this Handbook are important, and that violation of any Firm policy contained in this Handbook or elsewhere could result in corrective action, up to and including termination of employment.
>
> I understand that Goldberg Segalla is an "at will" employer and as such, employment with Goldberg Segalla is not for a fixed term or definite period and may be ended at the will of either party, with or without cause, and without prior notice. No Supervisor/Manager or other representative of the Firm except a member of the Facilitation Committee, in a signed writing, has the authority to enter into any agreement for employment for any specified period of time, with any employee, or to make any agreement contrary to the "at will" status of all employees of Goldberg Segalla.

[Exh. 8, GS 000209.]

14. Page 20 of the Employee Handbook provides under "Business and Personal Conduct," the following language:

> A violation of any of the following rules could result in serious loss to Goldberg Segalla and to its employees. Therefore, the Firm reserves the right to discipline Employees through the use of appropriate disciplinary action up to and including termination, for, among others, the following offenses, which are in no particular order:

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

- Dishonesty, including concealing or failing to report an error or mistake.
- Falsifying personnel records or other records of the Firm including employee time reports.
- Misrepresenting or omitting facts on an employment application or any other document used to secure or retain employment or advancement within the Firm.
- Insubordination or the refusal of an employee to follow a Supervisor's instructions concerning a job-related matter.
- Excessive tardiness or absenteeism.
- Failure to give proper notification of absence to your immediate Supervisor(s) and the appropriate 'Time Off' email group for your office within two hours of regularly scheduled starting time.
- Misuse or abuse of Firm computer systems.
- Unwillingness or inability to work in harmony with others.
- Threatening, intimidating, fighting with, injuring, harassing, discriminating against, or otherwise interfering with other employees at any time, including excessive "visiting" with other employees.
- Defacing or destroying Firm property.
- Making false, vicious, profane or malicious statements concerning the Firm or any employee of the Firm.
- Misuse or unauthorized disclosure of confidential, privileged, proprietary or trade secret information.
- Conflict of interest.
- Coming to work or being on Firm property or at a Firm or work-related function while under the influence or in the possession of intoxicating beverages, drugs, narcotics, or other controlled substances other than those prescribed by a physician.
- Possession of firearms, other weapons or other dangerous or harmful devices on Firm property.
- Immoral conduct or indecency, including the excessive use of profane or vulgar language.
- Engaging in misconduct, while on or off duty, which affects job performance, affects work relationships or brings discredit to the Firm.
- Repeated failure to meet minimum standards and requirements as established by the Firm.
- Smoking or vaping inside Firm buildings.
- Sleeping during working time.
- Falsifying or refusing to give statements or testimony in connection with the investigation of accidents, injuries, and other work-related

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

incidents or matters.

The list above is not intended to be all-inclusive of conduct for which an employee could be disciplined.  Any other conduct of a similarly injurious nature also may result in disciplinary action being taken by the Firm, up to and including termination.

[Exh. 8, GS 000262-263.]

15.   Pages 53 – 54 of the Employee Handbook further provide, in pertinent part:

Your employment is considered "at will." Corrective action and standards of conduct set forth in this Section and in this Handbook do not create a contract, promise or agreement of employment, real or implied, and do not change the employment status of a voluntary, at-will employee.

Forms of corrective action that the Firm may elect to use include verbal corrections, written warnings and/or suspensions.  The system is not formal, and the Firm may, at its sole and absolute discretion, deviate from any order of progressive corrective actions and utilize whatever form of correction it deems appropriate under the circumstances, up to an including immediate termination of employment.

Although employees may be warned about improper conduct prior to discharge, some expected standards of behavior are so implicit in the employer-employee relationship that their breach is an obvious act of willful or wanton disregard of the employer's interest resulting in no warning prior to employment termination.

Such behavior includes, but is not limited to, unlawful conduct; insubordination, fighting or horseplay; improper damage to or improper possession of or use of Firm property; failure to record revenue accurately; falsification; serious performance deficiency; use of recording device; failure to cooperate in a Firm or government investigation; failure to report injury or other required information; and failure to follow the Code of Ethics or Firm policies such as Business and Personal Conduct, Confidentiality and Conflict of Interest, Safety, Anti-Harassment, Discrimination, and Retaliation, Non-Solicitation, Workplace Violence, Employee Purchase, Electronic Equipment and Internet Access, Social Media, Drug and Alcohol, Smoking, Wage and Hour, Confidentiality, Protection of Medical Information, Timekeeping and Attendance as well as Absenteeism and Tardiness.

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

This list of reasons for immediate discharge is not intended to be exhaustive or all-inclusive. Rather, it is merely illustrative of the types of conduct, which may subject an employee to immediate discharge without prior warning.

[Exh. 8, GS 000295-296.]

## C.    The Dr. Goldman Matter

16.    In January 2018, Stephens' friend, attorney John Hendricks ("Hendricks") emailed Stephens seeking assistance with a file, *Goldman v. Facey Medical Group*, because his own firm, Hendricks Law, P.C. lacked the necessary resources and support staff to handle the matter.

17.    On January 23, 2018, Stephens sent Dr. Goldman a letter of representation, including a co-counsel agreement signed by Hendricks and Stephens, which specified that Goldberg Segalla would act as "lead counsel" while Hendricks Law would act as Dr. Goldman's "primary counsel." At page 2, paragraph 7 of the letter, it states that the monthly invoices will include disbursements. It states that disbursements are out of pocket expenses, such as filing fees, transcripts, process service, witness fees, long distance telephone calls, photocopying and facsimile charges, computerized research services, travel expenses and similar expenditures. The letter also states that Hendricks as the primary counsel would review the entire case file, develop case strategy, prepare demonstrative aids, exhibits and witness lists; and Stephens as the lead attorney would advise on case strategy, and review demonstrative aids, exhibits and witness lists The letter further indicates that as part of the co-counsel agreement, Hendricks Law's invoices may be included as items on Goldberg Segalla's invoices to Dr. Goldman. The co-counsel agreement specified that Goldberg Segalla as lead counsel was responsible for invoicing the client for lead counsel's attorneys' fees and costs together with primary counsel's attorneys' fees and costs. [Exh. 10, GS 000400-403; Exh. 11, GS 000393-399.]

18.    Beginning in March 2018, Stephens and Hendricks began to have conflicts with Dr.

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

Goldman regarding billing and the matter being significantly over budget. One of the main issues was that Dr. Goldman claimed that a $30,000 retainer was to cover costs through arbitration. [*See* Exh. 49, GS 000416-419.]

19. On May 8, 2018, Dr. Goldman emailed Stephens and Hendricks expressing dissatisfaction with the way his file was being handled. He requested that Stephens and Goldberg Segalla only bill for "what is absolutely necessary and that cannot be handled by John Hendricks' firm" and make him aware of any planned Goldberg Segalla charges along with why the work cannot be done by Hendricks' law firm before Goldberg Segalla did any additional work. Dr. Goldberg also asked that he only receive bills from Hendricks' firm, to include any future Goldberg Segalla billing. [Exh. 14, GS 000342-343.]

20. Stephens did not disclose Dr. Goldman's requests to Goldberg Segalla that he was no longer invoicing Dr. Goldman directly. When asked by Goldberg Segalla's Accounts Receivable, Stephens said that he was sending the Dr. Goldman invoices directly to the client, despite the fact that he was only sending them to Hendricks Law. [*See* Exh. 19-2.]

21. Soon thereafter, Stephens' time began being billed out to Dr. Goldman on Hendricks' invoices as "disbursements" for document management so that Dr. Goldman would not see that Stephens was still billing on the file. Stephens was aware that this was occurring and did not request that Hendricks stop this billing tactic. [Exh. 51, GS 000348-353; *see* Exh.42, GS 000098-100.]

22. In July 2018, Stephens and Hendricks prepared and executed a secondment agreement for Goldberg Segalla associate, Jordan Cohen, so that Cohen could be billed out as a Hendricks Law associate. This was also done without Goldberg Segalla's knowledge or approval. [Exh. 15, GS 000354-356.]

23. In early 2019, the American Arbitration Association ("AAA") returned to Hendricks Law $42,750 in arbitration fees that had been over-paid by Dr. Goldman. Stephens immediately asserted a lien on the funds on Goldberg Segalla's behalf, again without

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

the firm's knowledge or approval. [Exh. 17, GS 000388-390; Exh.18, GS 000404; *see* Exh. 16, GS 000383-384; *see* Exh. 76, GS 000662]

24. By February 2019, Dr. Goldman owed Goldberg Segalla $48,000. [Exh. 67, GS 000499.]

25. On February 12, 2019, Hendricks wrote a letter to Stephens informing him that Dr. Goldman had requested the $42,750 be returned to him, Hendricks Law was not requesting any part of the funds, that Hendricks Law did not represent either of the parties, and asking that Stephens provide the legal basis on which he was asserting the lien on the funds. Stephens provided the legal basis via email the next day. [Exh. 17, GS 000388-390; Exh. 18, GS 000404; Exh. 58, GS 000466-468.]

26. On February 19, 2019, Hendricks emailed both Stephens and Dr. Goldman regarding the funds and asked that the men resolve the dispute amongst themselves.

27. On February 21, 2019, Dr. Goldman reached out to Goldberg Segalla partner, Christopher Belter ("Belter") regarding the billing issues and dispute with the firm over the $42,750. [Exh. 60, GS 000422-423; Exh. 62, GS 000448-450.]

28. On February 28, 2019, Belter informed Stephens via email that he was not pleased to learn of the over-billing on the Dr. Goldman file, the case misrepresentations, and that it had gone over budget. [Exh. 67, GS 000499-503.]

29. During the first week in March 2019, Belter sent several emails to Stephens seeking clarification of how Dr. Goldman's matter was being billed between the two firms. Stephens responded by explaining that Goldberg Segalla billed Dr. Goldman directly until June 2018 when the firm began billing through Hendricks Law. [*See* Exh. 19-1, GS 000504-506; Exh. 19-2, GS 000660-661.]

30. On March 7, 2019, Stephens emailed Belter claiming that he did not agree to Hendricks billing his time as disbursements and explained his circling of items on the invoices was done to indicate tasks in support of arbitration. Stephens further claimed that he was unaware that associate attorney Jordan Cohen was billing his time in the Hendricks system. [Exh. 79, GS 000691-692; *see* Exh. 19-2, GS 000660-

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

661.]

31. After Belter discovered what occurred, he apologized to Dr. Goldman and immediately removed the lien on the refunded AAA fees. [Exh. 76, GS 000662.]

32. Belter then recommended the immediate termination of Stephens' employment with Goldberg Segalla.

33. Stephens' employment with Goldberg Segalla was terminated on March 11, 2019. [Exh. 28, GS 000015-16; Exh. 29, Pltf. Docs. 020; Exh. 37, GS 000014.]

### D.   Other Stephens Performance Issues

34. Aside from the mishandling of the Dr. Goldman matter, there were several issues with Stephens' performance. [*See* Exh. 20, GS000191-193.]

35. On December 17, 2018, Richard Cohen received an email from an anonymous individual using a pseudonym, Cameron Matthews, regarding his dealings with Stephens. The email accused Stephens of illegally posting copyrighted content on the internet, stating "[t]his could be damaging to your business given John's responsibilities and representation of your company in the Digital Copyright department." [Exh. 34, GS 000119-13; Exh. 35, GS 000136-137.]

36. From September 2018 to January 2019, Stephens was present in the office only two to three days each week for a few hours each day, despite being the office administrative partner. [Exh. 20, GS 000192; Exh. 45, GS 000151.]

37. He was absent approximately four months from the Los Angeles office in 2018.

38. On February 19, 2019, Stephens invited an appellate attorney friend of his to the Goldberg Segalla Los Angeles office to solicit business. Stephens had arranged the visit without the firm's knowledge or approval. [Exh. 20, GS 000192.]

39. On two different occasions, Stephens accepted matters referred by an Orange County partner and then neglected to make contact with the business owners. [Exh. 20, GS 000191.]

40. As a result of Stephens' pattern of not following up with other partner business leads, several non-California partners cautioned against giving Stephens legal work

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW

because he failed to do anything for the clients, requiring that the partners rehabilitate the relationships. [Exh. 20, GS 000191.]

41.   On one occasion, Stephens failed to appear at a scheduled client meeting in the office so that he could have his car maintenance completed.

42.   On another occasion on January 8, 2019, Stephens failed to appear for a scheduled meeting with Vice Chair of the firm's Labor and Employment practice, Peter Woo. Stephens accepted the meeting invite, but never appeared for the meeting or followed up with Woo about his absence. [Exh. 21, GS 00143.]

43.   The following day, Stephens and Woo met to discuss the state of the firm's Los Angeles and Orange County offices and perceived shortcomings in Stephens' leadership. Woo followed up after the meeting via email that "I think [our chat] was very helpful in steering us in the appropriate direction to move towards a prosperous and successful 2019." Stephens responded thanking Woo for the discussion, and that he "really appreciate[d] the feedback and will use it to make 2019 a fantastic year for GS-LA and GS-OC." [*See* Exh. 22, GS 000144-145.]

44.   Stephens overbilled on two flat-fee matters resulting in $9,500 in write-offs. This was in part a result of Stephens' delegating the work yet failing to supervise the associate. [Exh. 25; Exh. 46, GS 000183.]

45.   Following Stephens' departure, Goldberg Segalla uncovered other billing discrepancies such as Stephens' time being entered on matters that he was not working and on which there was no record that he did any actual work on the files. The attorneys handling the subject matters confirmed that Stephens did not work on the matters.

46.   However, while Stephens was at Goldberg Segalla, he was the person responsible for reviewing the draft invoices and it appeared that he was approving his fictitious time entries and Goldberg Segalla was billing it out to the clients.

47.   Stephens indicated in his pre-hiring Lateral Partner Candidate Due Diligence Questionnaire, dated December 10, 2017, that his portable billings and collections

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

were a minimum of $750,000.  He also indicated that in 2017, his billable hours were 1700 and in 2016, his billable hours were 1900.  [Exh. 5, GS 000025-31.]

48.    In his 2018 Partners Retrospective for Partners and Special Counsel, completed in the fall of 2018, Stephens indicated that he expected to have worked 1200 billable hours in 2018 with a dollar value of $420,000.  [Exh. 6, GS 000033.]

49.    In the year 2018, Stephens billed 894 hours amounting to a value of $271,771.71 with $249,788.98 in originations.

50.    In 2018, Stephens completed a Prospective Personal Development Marketing Plan for the year 2019 wherein he anticipated billing 1800 hours amounting to $750,000.00 and $750,000.00 in originations.  [Exh. 39, GS 000043-50.]

51.    Through his termination date, on March 11, 2019, Stephens billed only 65 hours—the equivalent of less than two weeks of work—amounting to $18,363.50 with $22,421.88 in originations.

**E.    Stephens' Compensation**

52.    Goldberg Segalla paid Stephens $288,461.50 as wages for the year 2018.  [Exh. 31, GS 000051.]

53.    Goldberg Segalla paid Stephens $120,374.61 as wages for the year 2019.  [Exh. 31, Pltf. Docs. 175.]

**F.    Stephens' Subsequent Employment**

54.    On March 12, 2019, Stephens executed an Of Counsel Agreement with Hendricks Law, P.C. [Exh. 4, Pltf. Docs. 163-173; *see* Exh. 41, GS 000056-57.]

55.    Hendricks Law issued Stephens a 1099-MISC form for 2019 documenting compensation in the amount of $15,262.25.  [Exh. 32, Pltf. Docs. 174.]

56.    Stephens initiated the instant action on March 8, 2020.

57.    In this action, Stephens has voluntarily limited his potential recovery to $700,000 less the amounts that he was paid by Goldberg Segalla and Hendricks Law in the years 2018 and 2019.  [*See* Docket ("Dckt.") Nos. 22 & 23.]

58.    On March 2, 2021, the Court entered an Order adopting the Joint Stipulation to

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

Exclude Testimony or Other Evidence at Trial for Purpose of Obtaining Recovery for Economic Loss After December 31, 2019 on Breach of Contract Claims, limiting Stephens' potential contract damages to the years 2018 and 2019. [Dckt. No. 23.]

59. If and to the extent that any foregoing Finding of Fact is actually a conclusion of Law, then it shall be deemed a Conclusion of Law.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction

60. There is complete diversity between Plaintiff and Defendant and the amount in controversy exceeds $75,000. The Court has original subject matter jurisdiction under 28 U.S.C. Section 1332.

61. Venue of this action is proper in the Central District of California pursuant to 28 U.S.C. Section 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

### B. Stephens' Claim for Breach of Contract

62. Stephens alleges that Goldberg Segalla breached an employment contract by terminating his employment as a non-equity partner without cause. "A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008), *as modified on denial of reh'g* (Feb. 5, 2008); *see First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

#### 1. Stephens' Has Not Met His Burden of Proving the Existence of a Contract

63. Stephens and Goldberg Segalla dispute that they entered into a contract with one another. *See* RESTATEMENT (SECOND) OF CONTRACTS, § 1 ("A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty").

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

64.    While the December 16, 2017 Offer Letter appears on its face to contain an offer and an acceptance, in order for the acceptance of a proposal to result in the formation of a contract, the proposal "must be sufficiently definite, or must call for such definite terms in the acceptance, that the performance promised is reasonably certain." *Weddington Productions, Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998). If the terms of the agreement are not sufficiently definite or reasonably certain, no contract will be said to exist. *Id.*

65.    To be a valid enforceable contract under California Law, a contract must be sufficiently definite "for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006). The contract terms must be clear enough that the parties could understand what each was required to do. *Estate of Thottam*, 165 Cal. App. 4th 1150, 1174 (2008).

66.    The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. RESTATEMENT (SECOND) OF CONTRACTS § 33(2); *Alexander v. Codemasters Group Ltd.*, 104 Cal. App. 4th 129, 141 (2002). Conversely, a contract that is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained is void and unenforceable. *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1174 (2016).

67.    Stephens has failed to demonstrate that the Offer Letter is a contract because the Offer Letter does not contain sufficiently definite and certain terms. The evidence shows that the Offer Letter lacks a specified time period or term of employment, explicitly stating instead that Stephens is employed "at-will." The Offer Letter further notes that "you will receive the comprehensive information about our bonus program and compensation criteria," demonstrating that the Offer Letter itself was not sufficiently definite and specific with respect to Stephens' employment.

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

## 2.    Interpreting the Offer Letter as a Contract

68.    Even if Stephens had met his burden of establishing the existence of an employment contract, the parties disagree, however, as to the nature of their respective obligations under the contract, and as to the meaning of certain contract terms.[1]

69.    The Agreement expressly provides that Stephens' is to be "employed at will." California Labor Code § 2922 provides a presumption that employment is "at-will" which may only be overcome by evidence of an agreement to terminate employment only for cause. *Starzynski v. Capital Public Radio, Inc.*, 88 Cal. App. 4th 33, 37-38 (2001). Neither party has identified any such limiting language in the Agreement, however.

70.    As a consequence. The Court concludes that the Agreement does not provide any limitations on Goldberg Segalla's ability to terminate Stephens' employment.

---

[1] To the extent that parol evidence was offered at trial to explain the meaning of the contract, California's parol evidence controls. Under that rule, extrinsic evidence is not admissible to contradict the express terms of a written contract. Parol evidence may be admitted, however, to explain a contract term, when the meaning urged is one to which the provision is reasonably susceptible or when the contract is ambiguous. *Sunniland Fruit, Inc. v. Verni*, 233 Cal. App. 3d 892, 898 (1991). Whether to admit parol evidence involves a two-step process. First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intent to determine if the provision is ambiguous, i.e., whether it is reasonably susceptible of the interpretation being urged by one of the parties. If the court concludes it is, then the evidence is admitted to aid in interpreting the contract. *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992); *see also General Motors v. Superior Court*, 12 Cal. App. 4th a435, 441 (1993); *Consolidated World Investments, Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 379 (1992). Determining whether the extrinsic evidence proffered is relevant to prove a meaning to which the contract is reasonably susceptible is a question of law. Resolving conflicts in the extrinsic evidence, and construing ambiguous language in light thereof, is a question of fact. *Winet*, 4 Cal. App. 4th at 1165-66; *see also Apple Computer, Inc. v. County of Santa Clara Assessment Appeals Board*, 105 Cal. App. 4th 1355, 1371 (2003) (whether a contract is clear and unambiguous is a question of law); *Sanchez v. Bally's Total Fitness Corp.*, 68 Cal. App. 4th 62, 69 (1998) (same); *Abifadel v. Cigna Insurance Co.*, 8 Cal. App. 4th 145, 159 (1992) ("The interpretation of a contract is a question of law when the contract terms are unambiguous. However, when extrinsic evidence is required to determine the intent of the parties to the contract, the interpretation becomes a question of fact for the trier of fact.").

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

### 3.   Stephens' Performance or Excuse for Nonperformance

71.   As noted, to prevail on a breach of contract claim, Stephens must show that he performed his obligations under the Agreement or was excused from doing so.[2] *Careau and Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990).

### a.   Whether Stephens Failed to Perform His Obligations Under the Contract

72.   Goldberg Segalla disputes that Stephens performed his obligations under the Agreement which provides in part, that it is "expected and understood that partners will" (a) coordinate on business development both before and after such efforts, (b) respond to colleagues and clients in a timely manner, (c) issue client invoices

---

[2] Goldberg Segalla argues both that Stephens failed to perform and that there was a failure of consideration. Stated differently, it denies that Stephens has proved the performance element of his claim, and additionally asserts the affirmative defense of failure of consideration. The Restatement (Second) of Contracts has substituted "failure of performance" for "failure of consideration," essentially eliminating any meaningful distinction between the two terms. *See* REST.2D, CONTRACTS, § 237, cmt. a and Reporter's Note ("What is sometimes referred to as 'failure of consideration' by courts and statutes . . . is referred to in this Restatement as 'failure of performance' to avoid confusion with the absence of consideration"); *id*., Reporter's Note ("This section . . . abandons as misleading the term 'failure of consideration' . . . in favor of 'failure of performance'"). *See also Taliaferro v. Davis*, 216 Cal.App.2d 398, 411 (1963) ("[F]ailure of consideration is based, not upon facts existing at the time the mutual promises bargained for in a bilateral contract are made, but upon some fact or contingency which occurs between the time of the making of the contract and the action which results in the material failure of performance by one party"); *Boswell v. Reid*, 199 Cal. App. 2d 705, 712-13 (1962) (the failure of consideration defense "rests upon some fact or contingency which occurred between the time of the making of the contract and the action thereon, resulting in the material failure of performance by one party. Failure of consideration is the failure to execute a promise, the performance of which has been exchanged for performance by the other party" (citations and internal quotation marks omitted)). Goldberg Segalla acknowledges that the defenses are interrelated and are for all practical respects . . . the same. For this reason, the court treats Goldberg Segalla's arguments regarding failure of performance and failure of consideration as an assertion that Stephens failed to perform his obligations under the Agreement and evaluates both under this rubric.

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

immediately upon receipt, (d) follow-up with clients for amounts past due regularly, (e) "be honest in dealing with colleagues, clients and other professionals", (f) keep the firm informed regarding involvement in the business of the firm, (g) "maintain the highest standards in terms of both personal and professional conduct, and (h) obtain the firm's prior written consent before receiving or retaining any payment for business done by the firm.

73. Goldberg Segalla adduced evidence—which Stephens has not disputed—that Stephens failed to perform as to several of the expectations noted in the Agreement. In particular, emails and other trial testimony demonstrated that: (i) Stephens' handling of the *Goldman v. Facey Medical Group* matter resulted in a dissatisfied client; duplicate and over billing;  attorney fees disguised as disbursements;  and a $48,000 write off in attorney fees by Goldberg Segalla, (ii) between September 2018 to January 2019, Stephens was present in the office only 2 to 3 days per week and he typically left the office by 3:00pm; and several complaints from Los Angeles attorneys and staff about Stephens' lack of leadership and presence in the Los Angeles office, (iii) non-California partners cautioned against giving Stephens legal work because he failed to follow up with the clients damaging their relationships; (iv) Stephens failed to appear for a scheduled meeting with Goldberg Segalla's Vice Chair of Labor and Employment Practice, Peter Woo and never followed up regarding his absence, despite confirming the meeting and he missed partner meetings; (v) on February 19, 2019, Stephens invited a friend to the Los Angeles office to solicit business without obtaining the requisite firm approval; and (vi) he overbilled on two flat-fee matters resulting in write-offs.

74. Further, Stephens' actions and inactions constituted violations of the policies of the firm as noted in the Employee Handbook, which Stephens acknowledged at the outset of employment.

75. In addition, Stephens billed 894 hours in the year 2018 when he was expected to bill 1,850 hours to be eligible for a production bonus.   In the 2018 Partners

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

Retrospective, Stephens estimated his billable hours for 2018 would be 1,200. He did not come close to meeting his own projected billable hours. Stephens' origination in the year 2018 was merely $249,788.98, when it was expected to be in excess of $750,000. Moreover, Stephens feigned ignorance of his billable hours and originations in his testimony, which failed to refute any of the facts set forth above.

76. Accordingly, the Court finds that Stephens' performance and production missteps demonstrate his failure to satisfy his employment obligations to Goldberg Segalla.

       **b.** **The Trigger for the Employment Termination - Whether Stephens Failed to Perform His Obligations Under the Agreement Through his Dealings on the Dr. Goldman Matter**

77. Stephens appears to argue he is guilty of no indiscretions in relation to the Dr. Goldman matter, and that Dr. Goldman was simply an extraordinarily difficult client to deal with.

78. As noted, Goldberg Segalla adduced significant evidence to the contrary. First, Dr. Goldman complained that his legal matter was being handled poorly by Stephens, and as a result requested that Goldberg Segalla and Hendricks not bill time on the matter "unless absolutely necessary." Second, Stephens set up a secondment arrangement for one of Goldberg Segalla's associates, Jordan Cohen, to work for Hendricks Law, and arranged for Hendricks Law to bill the associate attorney at a different rate than the Goldberg Segalla rate, so that Hendricks made additional fees on the associate's time. All of this was done with neither the requisite knowledge, nor approval of Goldberg Segalla management. Third, because Dr. Goldman specifically directed that Stephens no longer work on his case, Stephens then conspired with Hendricks to bill his own time on the Hendricks invoices as a disbursement for document management. Stephens' testified that he did not dispute the Hendrick's change of his time entries to disbursement for document management; and that he did not either agree or ratify the change, but he did not stop it. Stephens testified that this was done so that Dr. Goldman would not see Stephens'

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

name on the invoices, since Dr. Goldman had previously requested that Stephens not work or bill time further on the matter.  Fourth, Stephens told Goldberg Segalla's Billing and Accounts Receivable Department personnel that he was sending Goldberg Segalla invoices directly to Dr. Goldman when, in fact, he was sending them only to Hendricks, so that some of the charges on the invoices could be included on and hidden within the Hendricks Law invoices (these include charges for associate Jordan Cohen's time and Stephens' time billed as a disbursement).  Fifth, Goldberg Segalla CFO James Felman and Belter confronted Stephens on multiple separate occasions about the unpaid invoices on the Dr. Goldman matter.  Each time, Stephens falsely confirmed he had sent the invoices to Dr. Goldman and he would follow up with him on payment.  Stephens kept hidden from Goldberg Segalla partner Belter, CFO Felman and firm management that (i) the firm was no longer invoicing the Dr. Goldman directly and (ii) Dr. Goldman requested that Stephens and Goldberg Segalla no longer work on the matter.  Sixth, at some point, Dr. Goldman overpaid $42,750 in administrative fees to the AAA on the pending arbitration of the legal matter.  As a result, the AAA refunded this amount to Hendricks Law in early 2019.  These funds were due back to Dr. Goldman as he had paid all legal invoices that had been presented to him.  Stephens (again without any notice or approval from Goldberg Segalla) asserted a lien on behalf of Goldberg Segalla against Dr. Goldman's refunded administrative fees now in the possession of Hendricks Law.  The alleged basis of the lien was the Goldberg Segalla invoices that Stephens never sent to Dr. Goldman.  Not only did Dr. Goldman have no knowledge of these invoices but some of the charges on these invoices had already been billed to Dr. Goldman through the Hendricks Law invoices.  Stephens was asserting an unapproved lien on behalf of Goldberg Segalla for invoices never sent to Dr. Goldman and, in part, for services that had already been paid for on the Hendricks Law invoices.  Seventh, on February 21, 2019, Dr. Goldman contacted Belter regarding the billing issues and disputes with the firm.  On February 28, 2019,

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

Belter emailed Stephens informing him that he was not pleased that Dr. Goldman was overbilled and there were misrepresentations regarding the merits of case and that he was not informed as to the budget.  Belter contacted Stephens by telephone to discuss the issues.   Stephens lied to Belter and told him that there were no issues with the handling of the matter and Dr. Goldman owed $48,000 for invoices properly sent to him for services performed by the firm.

79. By February 2019, Dr. Goldman owed the firm $48,000.  Dr. Goldman demanded return of the $42,750 (refund of arbitration fees) held in the Hendricks trust account and demanded that Goldberg Segalla relinquish its claims for $48,000.  In March 2019, Belter sent several emails to Stephens seeking clarification of how Dr. Goldman's matter was being billed, as he was now aware from his own investigation that Stephens may have been passing his and associate attorney Jordan Cohen's time onto Hendricks Law to be billed on that firms invoices.   Stephens responded by explaining that Goldberg Segalla billed Dr. Goldman directly until June 2018 when Goldberg Segalla began billing through Hendricks Law.  Dr. Goldman had told Belter that he fired Stephens from his case and told him not to work on the matter. Belter's investigation revealed that Stephens was bundling his time by circling all of the time entries on the draft bills and having that time billed out by Hendricks Law as a "document management" disbursement on its invoice.  By doing this, Stephens' name would not appear on the invoices presented to Dr. Goldman and he would not know that Stephens was still working on the files.  The amounts of the circled time entries on the Goldberg Segalla draft bills matched the amounts billed on the Hendricks Law invoices for the "document management" disbursement.  On March 7, 2019, Stephens emailed Belter claiming that he did not agree to Hendricks billing his time as disbursements and explained that his circling of items on the invoices was done to indicate tasks in support of arbitration.  He also claimed that he was unaware that associate attorney Jordan Cohen was billing his time in the Hendricks system.   After Belter confirmed what had occurred, Belter apologized to Dr.

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

Goldman and immediately removed the lien on the refunded AAA fees.

80. Having addressed Goldberg Segalla's arguments concerning Stephens' purported failure to perform, the Court finds that Stephens failed to prove by a preponderance of the evidence that he satisfied his obligations under the Agreement.

### 3. Whether Goldberg Segalla Breached the Agreement

81. Page 2 of the Agreement outlined Goldberg Segalla's Level 2 partner compensation as a "base+bonus" system wherein partners in Stephens' position receive a standard yearly base salary of $120,000, "to which bonuses for production and 'leadership' [ ] are added to arrive at a total compensation figure."

82. It set forth the production bonus as $20,000 for a Level 2 partner who bills a certain number of hours with a realized value of at least $300,000, plus 25% of the portion of the realized value of the partner's billable hours in excess of $300,000. The leadership bonus is subjective but based on specified objective criteria including various indicia of leadership.

83. The Agreement further specified that Stephens' "total compensation figure for any given year would be a total of the base + production bonus + leadership bonus" and that "through 2019 [Stephens'] per annum draw will be $300,000 with that portion of [his] compensation" in excess of $120,000 considered an advance on Stephens' bonus, "applied first to whatever leadership bonus [Stephens] earn[s] and the remainder is then applied to" any earned production bonus.

84. The parties have stipulated that Goldberg Segalla paid Stephens $288,461.50 in wages for 2018 and $113,797.07 in wages for the three months he was employed in 2019.

85. Because the Court has found that there was a failure of consideration or failure of performance by Stephens, it concludes that Goldberg Segalla did not breach its compensation obligations under the Agreement.

86. Moreover, even if Stephens had demonstrated sufficient consideration on his part, Goldberg Segalla contends that Stephens' satisfactory performance and achievement

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

of the aforementioned bonus criteria was a condition precedent to its obligation to pay Stephens $300,000 per annum. Unlike a contract term, the breach of which must be material before it excuses the other party from performing, a party's failure to satisfy a condition precedent excuses any remaining obligations of the other party. *AIG Centennial Ins. Co. v. Fraley-Landers*, 450 F.3d 761, 764 (8th Cir. 2006) (citing Richard A. Lord, WILLISTON ON CONTRACTS, § 38:7 (4th ed. 1990) and RESTATEMENT (SECOND) OF CONTRACTS, § 224 (1981)).

87. Conditions precedent must be clear. *West American Ins. Co. v. Hernandez*, 669 F.Supp.2d 1211, 1223 (D. Or. 2009) ("'[A] court will not imply that a covenant is a condition unless it clearly appears the parties so intended it,'" quoting *Standard Oil Co. of Cal. v. Perkins*, 347 F.2d 379, 382 (9th Cir.1965)). A condition precedent is either an act of a party that must be performed or an uncertain event that must happen before a contractual right accrues or a contractual duty arises. *Platt Pacific, Inc. v. Andelson*, 6 Cal.4th 307, 313 (1993). *See also* CAL. CIV. CODE § 1436 ("A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed"). Conditions can be either express or implied. *See, e.g.*, *City of Hermosa Beach v. Superior Court*, No. B218010, 2010 WL 459609, *8 (2010).[3]

88. Bargained for consideration and conditions precedent or subsequent are distinct concepts. A contractual condition creates no rights or duties. *See United States v. Schaeffer*, 319 F.2d 907, 911 (9th Cir. 1963) ("A condition creates no right or duty of and in itself, but is merely a limiting or modifying factor. If it is breached or does not occur, the promisee acquires no right to enforce the promise. A promise raises a

---

[3] "Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

duty to perform and its breach subjects the promisor to liability and damages, but does not necessarily excuse performance by the other party"). Consideration, on the other hand, is something actually bargained for and given in exchange for a promise. *Jara v. Suprema Meats, Inc.*, 121 Cal.App.4th 1238, 1249 (2004) ("Section 71 of Restatement Second of Contracts states in pertinent part: '(1) To constitute consideration, a performance or a return promise must be bargained for. [¶] (2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise'"). Whether a provision in a contract is a condition or bargained for consideration depends on the intent of the parties as manifested in the agreement.

89.   Here, there is ample indication in the Agreement that the parties intended that the satisfactory performance by Stephens of the criteria for the leadership and performance bonuses was to be a condition precedent to Goldberg Segalla's payment obligation as opposed to bargained for consideration to be provided by Stephens. The contract specifically conditions Stephens' advance of the $300,000 per annum on hitting sufficient bonus milestones. *Cf. Roscoe Moss Co. v. Jenkins*, 55 Cal. App. 2d 369, 374 (1942) ("Since the contract price was payable on completion of the work, performance was a condition precedent to payment and to be alleged and proved as such").

90.   The suggestion that the hitting of certain bonus milestones was not a condition on which Stephens' $300,000 was premised, in fact, is inconsistent with certain of the express provisions of the contract, i.e., that the payment *advance* would be first applied to any earned leadership bonus followed by any production bonus. *See Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 612 (1975) ("There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time").

### 4.   Stephens' Damages

91.   Stephens contends that he is due a minimum compensation of $350,000 for each of

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW

2018 and 2019, minus those amounts that he was actually paid by Goldberg Segalla. In the alternative, Stephens argues on his claim for common counts that he is due at least the amount in the value of the work he performed at Goldberg Segalla. However, Stephens fails to adduce the monetary value of the work performed in excess of the wages he was already paid.[4]

92. "The basic object of damages is compensation, and in the law of contracts the theory is that the party injured by a breach should receive as nearly as possible the equivalent of the benefits of performance. The aim is to put the injured party in as good a position as he would have been had performance been rendered as promised." *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal. App. 3d 442, 455 (1990); *see also* CAL. CIV. CODE § 3300 ("For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom"). Stated differently, a party that prevails on a breach of contract claim is entitled to recover what it reasonably expected would be the benefit of its bargain, just as if there had been proper performance of the contract. *Jimenez v. Superior Court*, 29 Cal.4th 473, 494 (2002) ("failure to receive the benefit of the bargain is a core concern of contract . . . law").

93. Because the Court has found that Stephens did not satisfy his performance obligations, he is not entitled to any recovery.

94. Even were the Court to accept Stephens' construction of the contract and his claim of full and satisfactory performance, it could only award damages of up to $275,901.64. This is based on the contract damages for 2018 and 2019 minus

---

[4] Further, this common counts argument was not referenced in the pretrial conference order, causing the court to conclude that it was waived in any event. *See Bjorklund*, 728 F.2d at 1264 ("We have consistently held that issues not preserved in the pretrial order have been eliminated from the action").

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

$15,262.25 which Stephens mitigated for 2019 by working in an Of Counsel capacity at Hendricks Law.

95. Moreover, pursuant to the Court's March 2, 2021 Order adopting the parties' Joint Stipulation to Exclude Testimony or Other Evidence at Trial for Purpose of Obtaining Recovery for Economic Loss After December 31, 2019 on Breach of Contract Claims [Dckt. No. 23], Stephens' contract damages are limited to the years 2018 and 2019 only.

### 5. Goldberg Segalla's Affirmative Defenses

96. A number of Goldberg Segalla's affirmative defenses have been either addressed already or rendered moot because the Court found that no contract existed between Stephens and Goldberg Segalla. Goldberg Segalla also argued that Stephens cannot recover damages because even if a contract existed, Stephens failed to perform, its conduct was justified and in good faith, it fully performed, and because Stephens has unclean hands. Goldberg Segalla also asserted a fraud defense, and finally argued that it is entitled to an offset for wages paid to Stephens.

### C. Stephens' Claims of Fraud by Intentional Misrepresentation

97. To assert fraud, Stephens must establish: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997) (internal citation omitted).

98. Stephens alleges that Goldberg Segalla had no intention of retaining him for even the minimum term set forth in the Agreement. However, as addressed above, there is no specified time period that Stephens was guaranteed employment in the Agreement.

99. Stephen also alleges that as a result of his reliance on Goldberg Segalla's conduct, his damages amount to the equivalent of a promised salary. As noted above, that promised salary is mitigated by compensation for the years 2018 and 2019 from

**DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Goldberg Segalla, and the $15,262.25 in compensation which Stephens received for 2019 from Hendricks Law.

100. Based on the Court's findings of fact, Stephens has failed to adduce any evidence of Goldberg Segalla's misrepresentation, concealment, or intent to deceive him.

101. Accordingly, the Court concludes that Goldberg Segalla is not liable for fraud or intentional misrepresentation.

102. If and to the extent that any foregoing Conclusion of Law is actually a Finding of Fact, then it shall be deemed a Finding of Fact.

IT IS SO ORDERED.

_____

HON. PHILIP S. GUTIERREZ
UNITED STATES DISTRICT JUDGE

Respectfully submitted,

Dated:   June 22, 2021        JACKSON LEWIS P.C.


By:   /s/ Katessa M. Charles
       _____
       Katessa M. Charles
       Nicole A. Aaronson
       Attorneys for Defendant
       GOLDBERG SEGALLA LLP

DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW

**PROOF OF SERVICE**

**UNITED STATES DISTRICT COURT, CENTRAL DIST. OF CALIFORNIA**

**CASE NAME:     JOHN F. STEPHENS V. GOLDBERG SEGALLA LLP**

**CASE NUMBER: 2:20-cv-05216-PSG-PD**

     I am employed in the County of LOS ANGELES, State of California.  I am over the age of 18 and not a party to the within action; my business address is 725 South Figueroa Street, Suite 2500, Los Angeles, California 90017.

     On June 22, 2021, I served the foregoing document described as:

**DEFENDANT'S DEFENDANT GOLDBERG SEGALLA LLP'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**

in this action to:

Michael J. Glenn
LAW OFFICES OF JAMES M. DONOVAN
915 Wilshire Blvd., Suite 1610
Los Angeles, CA  90012
mglenn@thedonovanoffices.com
jmdonovan@thedonovanoffices.com

*Attorneys for Plaintiff*
*John Stephens*

**[X]    BY NOTICE OF ELECTRONIC FILING**.   The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(D).

**[X]    FEDERAL**  I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

     Executed on June 22, 2021 at Los Angeles, California.

Ruth Perez-Pico

4837-8063-5119, v. 2